UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JAMES TURNER                              CIVIL ACTION

VERSUS                                    NO. 12-834

COASTAL MARINE CONTRACTORS                SECTION "B"(4)
LLC, ET AL.

## ORDER AND REASONS

Before the Court is "Conequipos Ing. Ltda. and L.R. Maritime, LLC's Motion for Summary Judgment." Rec. Doc. 141. Pursuant to this Court's Scheduling Order, case-dispositive motions had to be filed in sufficient time to permit hearing thereon no later than February 17, 2017. Rec. Doc. 137. Defendants' motion was filed on February 17, 2017 and therefore is untimely. Nonetheless, Plaintiff filed a memorandum in opposition (Rec. Doc. 145) and, in the interests of justice, the Court will consider the motion as though it were timely filed. For the reasons discussed below,

**IT IS ORDERED** that Defendants' motion (Rec. Doc. 141) is **GRANTED IN PART.**

## I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This case arises out of injuries suffered by James Turner ("Plaintiff") on January 3, 2012. Rec. Doc. 1 at ¶ 7. At the time, he was employed by Frederick Brugge (also known as Fritz Brugge, but hereinafter referred to as "Brugge") and assigned to the vessel M/V JEFFERSON, a towing barge heading toward South America on

December 25, 2011. *Id.; see also* Rec. Doc. 145 at 5. During the voyage, Plaintiff claims that the vessel experienced "numerous mechanical and operational issues, including: (i) a leaking main-engine pipe that put the vessel at risk of sinking . . . ; (ii) the barge taking on substantial amounts of water . . . ; and (iii) the vessel itself slowing and taking on water." Rec. Doc. 145 at 5-6. At one point, the crew was forced to make an unplanned stop because there was insufficient fuel. *Id.* at 6. To bring the vessel into port, the crew had to manually pull the barge closer. *Id.* Apparently, the outer layers on the towing line that they used to pull the barge had "peeled all the way back," so when it was entangled in the tug's prop after the captain put the tug in reverse, it severed. *Id.* To secure an emergency line, Plaintiff was ordered to jump onto the barge from the tug boat. *Id.; see also* Rec. Doc. 1 at ¶ 7. As he attempted to return to the tug boat, the boat crashed into the barge, causing Plaintiff to fall. *Id.* He allegedly suffered injuries to his abdomen, back, and neck. *Id.* Consequently, on March 29, 2012, Plaintiff filed suit against Coastal Marine Contractors, LLC (the company tasked with making repairs to the vessel before its voyage, hereinafter referred to as "Coastal Marine") and Brugge, requesting actual and punitive damages, maintenance and cure benefits, costs, and attorneys' fees. *Id.* at ¶ V.

A preliminary default was entered against Brugge on December 6, 2012. Rec. Doc. 29. On January 28, 2013, Plaintiff dismissed Coastal Marine. Rec. Doc. 31. Plaintiff's second amended complaint brought claims against LR Maritime, LLC ("LR Maritime"), Tesza Marine, Inc. ("Tesza"), Conequipos Ing. Ltda. ("Conequipos"), and Brugge. Rec. Doc. 35 at ¶¶ 5-8. Apparently, the M/V JEFFERSON was owned by LR Maritime, chartered by Tesza and Conequipos, and operated by those parties jointly. *Id.* at ¶ 9.

Over the next two and a half years, Plaintiff attempted to serve Conequipos, a Colombian entity. Rec. Docs. 48-49, 51-52, 54-55, 57-58, 64-67, 69, 71-72, 86-87, 90-91. Accordingly, on March 2, 2015, the case was administratively closed. Rec. Doc. 88. On August 19, 2015, after Conequipos was eventually served, the case was re-opened. Rec. Doc. 97.

On July 14, 2016, Plaintiff filed a fourth amended complaint, adding Global Mariner S.A.S. ("Global Mariner"), another Colombian entity, as a defendant, "because it is [a] signatory to a contract relating to the provision of a crew for the vessel on which Plaintiff was injured." Rec. Docs. 116; 119 at ¶ 8. On September 16, 2016, Plaintiff informed the Court that it had not yet been able to serve Global Mariner and specifically requested that trial be rescheduled for March 24, 2017. Rec. Doc. 136. We granted the motion in part, setting new deadlines and scheduling trial for

March 27, 2017. Rec. Doc. 137. However, Global Mariner was never served.

## II.  THE PARTIES' CONTENTIONS

According to Defendants Conequipos and LR Maritime, they "relinquished operational control of the vessel pursuant to a Sea Staff Supplying Agreement between [the charterer,] Global Mariner[,] and the contractor, Fritz Brugge." Rec. Doc. 141-1 at 1. Because neither Defendant employed Plaintiff or operated the vessel at the time of Plaintiff's injury, Defendants argue that Plaintiff cannot prove that they breached any duty to him. *Id.* at 2. Defendants maintain that the Sea Staff Supplying Agreement (the "Agreement") demonstrates that operational control was given to Brugge, who provided the crew and issued all directions as the employer. Rec. Doc. 141-1 at 3 (citing Rec. Doc. 141-3, providing that the contractor, Brugge, would provide a captain, chief engineer, and three sailors, and that "[u]nder his command, the staff will operate the tugboat to tow the barge thus being responsible for its maneuver, handling, readiness, [etc.]"). Defendants also argue, based on Plaintiff's deposition testimony, that Plaintiff's injuries were the result of "operational factors related to recovering the barge," including "the combination of the grounding, the barge, and the tug's counter-movements to keep them off the shore . . . ." Rec. Doc. 141-1 at 7. These "navigational decisions and actions" were made by the captain and

crew and, according to Defendants, cannot be attributed to Defendants. *Id.* at 4. To summarize, Defendants maintain that Brugge, as Plaintiff's employer and the only party with operational control of the vessel at the time of Plaintiff's injuries, is the only party that could be held liable under the Jones Act, for maintenance and cure, or under general maritime law for negligence. *Id.* at 14.

Plaintiff does not dispute that Defendants Conequipos and LR Maritime are not his employers and therefore agrees that they are entitled to summary judgment as to Plaintiff's claims for maintenance and cure and negligence under the Jones Act. Rec. Doc. 145 at 1, n.1. Accordingly, these claims will not be discussed below. Nonetheless, Plaintiff further responds that Defendants are liable under general maritime law because (1) Defendants Conequipos and LR Maritime did not relinquish operational control; and (2) even if they did relinquish such control, Defendant LR Maritime breached its nondelegable duty to provide a seaworthy vessel and Conequipos breached its general duty to exercise reasonable care. *Id.* at 1-2.[1] Specifically, Plaintiff argues that his injuries were the result of "LR Maritime's and Conequipos's decision to use an <u>inland</u> tugboat crewed by a captain without

---

[1] Notably, "Jones Act negligence and unseaworthiness under general maritime law are two distinct causes of action, each involving separate standards of proof, causation, and review." *Johnson v. Offshore Exp., Inc.*, 845 F.2d 1347, 1354 (5th Cir. 1988) (citation omitted).

tugging experience and two 'green' hands for an <u>off-shore</u> tow of a <u>sinking</u> barge." Rec. Doc. 145 at 2 (emphasis in original). Plaintiff notes that the JEFFERSON is an inland tank barge that was not designed for offshore towing. *Id.* (citing Rec. Doc. 145-2 at 4). Before the voyage to Colombia, Conequipos hired Coastal Marine to perform any necessary repairs to the vessel and otherwise prepare it for the voyage. *Id.* (citing Rec. Doc. 145-6 at 5).[2] However, Plaintiff maintains that Coastal Marine was told to make only minimal repairs. *Id.* (citing Rec. Doc. 145-7 at 1, an email in which a Conequipos representative told a Coastal Marine representative "Anything we can do to reduce the cost (you know our tale on this one) without compromising security would help."). Further, the vessel purportedly "left port with insufficient power to complete its voyage, 'towing gear of minimal size,'" without required international safety certificates, without first conducting safety reviews, and without procedures to ensure that the vessel was properly maintained. *Id.* at 4 (citing Rec. Doc. 145-2 at 5-8).[3] These failures led Plaintiff's expert to conclude that "the vessel and barge were unseaworthy for an international and trans ocean transit." Rec. Doc. 145-2 at 8. Similarly,

---

[2] Rec. Doc. 145-6 contains the deposition testimony of Coastal Marine's representative, Gary LeBlanc; it will be cited according to the record document page number, rather than the deposition transcript page.
[3] Rec. Doc. 145-2 contains an investigative report from Plaintiff's expert, Steven E. Caskey of Nautilus Global, LLC; it will be cited according to the record document page number, rather than the internal pagination.

Plaintiff maintains that the vessel's five-man crew, who had no offshore towing experience and two of whom were unlicensed, were also "unseaworthy." Rec. Doc. 145 at 5.

### III. <u>LAW AND ANALYSIS</u>

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting FED. R. CIV. P. 56(c)). *See also TIG Ins. Co. v. Sedgwick James of Washington*, 276 F.3d 754, 759 (5th Cir. 2002). A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant must point to "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. If and when the movant carries this burden, the non-movant must then go beyond the pleadings and present other evidence to establish a genuine issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

However, "where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994). Conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. *Travelers Ins. Co. v. Liljeberg Enter., Inc.*, 7 F.3d 1203, 1207 (5th Cir. 1993).

While Defendants maintain that the Agreement between Global Mariner and Brugge delegated all responsibility for the crew to Brugge (Rec. Doc. 141-3), Plaintiff argues that (1) the Agreement does not explain the relationship between Global Mariner and LR Maritime (the owner of the vessel) and (2) a Coastal Marine employee testified that it was Conequipos that directed the pre-departure maintenance and repair work, hired the crew, and asked that advance payments be made to the crew (Rec. Doc. 145 at 5, 8-9 (citing Rec. Doc. 145-6 at 6, 9, 10, 11).

The Court agrees with Plaintiff that there is no evidence that Defendant Global Mariner, which has not been served, had any authority to relinquish control of the vessel to Brugge on behalf of either LR Maritime or Conequipos. The relationship between these parties is unclear. LR Maritime purportedly owned the vessel, while

Conequipos chartered it and directed Coastal Marine to repair it.[4] The only evidence related to Global Mariner is the Agreement and Defendants' statement that Global Mariner was the charterer; however, the Agreement fails to detail Global Mariner's relationship to the vessel and the Court is not prepared to rely on Defendants' uncorroborated statements. With the evidence presently before the Court, it cannot be determined on summary judgment who had operational control of the vessel.

Nonetheless, Plaintiff further argues that, even if operational control was given to Brugge,[5] "LR Maritime had a non-delegable duty to provide a seaworthy vessel to those working aboard it" (Rec. Doc. 145 at 9) and Conequipos breached its duty of reasonable care to Plaintiff (*id.* at 11).

"To be seaworthy, a vessel and its appurtenances must be reasonably suited for the purpose or use for which they were intended." *Johnson v. Offshore Exp., Inc.*, 845 F.2d 1347, 1354 (5th Cir. 1988) (citation omitted). "[T]he owner's duty to furnish a seaworthy ship is absolute and completely independent of his duty under the Jones Act to exercise reasonable care." *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 549 (1960). Accordingly, the plaintiff does not have to show that the owner was negligent.

---

[4] The relationship of Defendant Tesza Marine, Inc. to the parties is also unclear, but it is not the subject of the instant motion for summary judgment.
[5] Though, Plaintiff continues to contest this point, noting that Brugge "did not command the vessel, . . . did not obtain insurance coverage, and . . . did little to prepare the tug . . . ." Rec. Doc. 145 at 9.

*Johnson*, 845 F.2d at 1354 (citation omitted). Rather, "[t]o establish the requisite proximate cause in an unseaworthiness claim, a plaintiff must prove that the unseaworthy condition played a substantial part in bringing about or actually causing the injury and that the injury was either a direct result or a reasonably probable consequence of the unseaworthiness." *Id.* (citations omitted). Significantly, "[t]he warranty of seaworthiness includes a seaworthy crew and the ship owner's duty is breached by providing a 'defective' or inadequate crew." *Comeaux v. T.L. James & Co.*, 666 F.2d 294, 299 (5th Cir. 1982), *supplemented,* 702 F.2d 1023 (5th Cir. 1983). Further, "a seaman may have recourse in personam against the owner of an unseaworthy vessel, without regard to whether owner or bareboat charterer is responsible for the vessel's condition." *Baker v. Raymond Int'l, Inc.*, 656 F.2d 173, 184 (5th Cir. 1981); *see also Torch, Inc. v. Alesich*, 148 F.3d 424, 427 (5th Cir. 1998) ("Despite the existence of a bareboat charter, the owner of the vessel can be liable to third persons if the vessel was not seaworthy at the inception of the charter").[6]

Here, Plaintiff claims that LR Maritime presented an unseaworthy vessel "by providing an inland tow boat not fit for international travel, an inexperienced crew, and a vessel with insufficient towing equipment for the work required." Rec. Doc.

---

[6] Notably, the parties do not conclusively indicate the type of charter at issue in this case. *See, e.g.* Rec. Doc. 141-2 at ¶ 29.

145 at 10 (citing Rec. Doc. 145-2 at 5-8). The Court notes that Plaintiff specifically stated that the tow line was frayed and that the vessel was not equipped with a winch. Rec. Doc. 145 at 6. This seems to contradict Defendants' statement that "no equipment failures caused the fall." Rec. Doc. 141-1 at 6. Further, Plaintiff suggests that they were only attempting to go into port because the vessel was not supplied with sufficient fuel to make the voyage. Rec. Doc. 145 at 11, 13. On this evidence, it is impossible for the Court to determine the proximate cause of Plaintiff's injuries. A reasonable jury could return a verdict for Plaintiff (*Anderson*, 477 U.S. at 248), so Defendants are not entitled to summary judgment on this issue.[7]

"To establish maritime negligence, a plaintiff must 'demonstrate that there was a duty owed by the defendant to the plaintiff, breach of that duty, injury sustained by [the] plaintiff, and a causal connection between the defendant's conduct and the plaintiff's injury.'" *Canal Barge Co. v. Torco Oil Co.*, 220 F.3d 370, 376 (5th Cir. 2000) (quoting *In re Cooper/T. Smith*, 929 F.2d 1073, 1077 (5th Cir. 1991)).

---

[7] Defendants also argue that Brugge's operational control of the vessel was an intervening cause of Plaintiff's injuries and thereby relieved Defendants of any liability. Rec. Doc. 141-1 at 12 (citations omitted). However, the Court agrees with Plaintiff that "the last clear chance doctrine is obsolete in light of admiralty's comparative fault regime . . . ." *In re Mid-S. Towing Co.*, 418 F.3d 526, 532 (5th Cir. 2005). Plus, causation issues, in light of the limited evidence presented to the Court, do not appear appropriate for summary judgment at this time.

Here, Plaintiff claims that Conequipos breached its duty to him by allowing the vessel to leave port with insufficient power to complete its voyage, without required international safety certificates, without having conducted regulatory or safety reviews, without supplying maintenance procedures, and by providing "towing gear of minimal size." Rec. Doc. 145 at 12. Defendants argue that they did not employ the crew, did not have any personnel on board during the voyage, and "never asserted any operational control of the vessels when the injury occurred." Rec. Doc. 141-1 at 14. Plaintiff's witnesses suggest that Conequipos directed operations and repairs prior to the voyage. Despite the Agreement, this conflicting evidence could lead a reasonable jury to find that Conequipos owed a duty to Plaintiff, breached that duty, and thereby caused Plaintiff's injuries. Again, summary judgment would be inappropriate.

## IV.  <u>CONCLUSION</u>

Accordingly,

**IT IS ORDERED** that Defendants' motion (Rec. Doc. 141) is **GRANTED IN PART**. Defendants Conequipos and LR Maritime are entitled to summary judgment dismissing Plaintiff's maintenance and cure and negligence claims under the Jones Act. Accordingly, those claims against these Defendants are **DISMISSED WITH PREJUDICE**. However, Defendants are not entitled to summary judgment on either

Plaintiff's unseaworthiness claim against LR Maritime or his negligence claim against Conequipos.

New Orleans, Louisiana, this 13th day of March, 2017.

_____
SENIOR UNITED STATES DISTRICT JUDGE